IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**JTH TAX, INC.,**

      **Plaintiff,**

      v.                                       **CIVIL ACTION NO. 2:06cv47**

**DIANE DONOFRIO,**

      **Defendant.**

*MEMORANDUM OPINION & ORDER*

JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty")("Plaintiff") brought this action against Diane Donofrio ("Defendant"), claiming damages based on breach of a Mutual Termination Agreement. Plaintiff alleges that Defendant violated the covenant not to compete and the covenant not to solicit Liberty customers pursuant to the Termination Agreement. This instant matter comes before the Court on Plaintiff's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Plaintiff's Motion for Summary Judgment is **GRANTED.**

**I. FACTUAL AND PROCEDURAL HISTORY**

For the purposes of this motion, the Court assumes that the following facts are true.[1] Liberty is a corporation duly organized and existing under the law of the State of Delaware, with its corporate headquarters and principal place of business located in Virginia Beach, Virginia.

---

[1] Rule 56(b) of the Local Rules of the United States District Court for the Eastern District of Virginia requires that a motion for summary judgment include a list of undisputed facts. The Court assumes that any facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief. The Defendant in this case has failed to controvert any of the facts alleged in Plaintiff's motion. Accordingly, the Court will assume such facts to be true.

The Defendant first became a Liberty franchisee in Memphis, Tennessee on December 13, 1999. On September 24, 2003, Liberty and Defendant executed their second Franchise Agreement for a Liberty Tax Service franchise in New Port Richey, Florida (Franchise Territory Number: FL023).  Approximately one year later, on September 9, 2004, Liberty and Defendant executed a Franchise Agreement for two additional franchise offices in West Pasco, Florida (Franchise Territory Number: FL022).   The Addresses for the offices were:

| Franchise Territory | Office Address |
| --- | --- |
| FL022 | 8647 Little Road, Suite 9, New Port Richey, Florida |
| FL022 | 13347 Golf Crest Circle, Tampa, Florida |
| FL023 | 5509 US Highway 19, New Port Richey, Florida |

The Franchise Agreements for all three offices granted Defendant the right to operate the Liberty Tax Service franchises using Liberty's proprietary trademarks and methods in these specified territories in Florida.

Defendant operated the tax offices until on or about May 16, 2005, at which time, Defendant and Liberty entered into a Mutual Termination Agreement effectuating the termination of both Franchise Agreements (for all three offices).  As of the effective date of the Mutual Termination Agreement, Defendant owed Liberty $99,359.85.  However, pursuant to the contract, the entire debt was forgiven.  Morever, the Termination Agreement and the Franchise Agreements also provided for certain post termination obligations.  Under both contracts Defendant was bound by: (1) a **covenant not to compete** within twenty-five (25) miles of her former territories for a period of two (2) years following the May 16, 2006 termination date; and, (2) a **covenant not to solicit** the patronage of any customers, either individuals or entities served

by her Liberty franchise offices within twenty-five (25) miles of her former territories for the same period of two (2) years.

However, on or about January 7, 2006, Donofrio sent out a solicitation letter which stated in part:

> "In May 2005, I sold my Liberty franchise back to our corporate office. However I still plan to do taxes, bookkeeping and payroll services in a new location with a new name, Taxpro. Our new location is 8647-6 Little Road inside Florida Discount Insurance in the Ridge Plaza at the intersection of Ridge & Little Road. I hope I can continue to prepare your taxes or help with any business needs you might have."

On February 20, 2006, Mrs. Connie Sharp, Liberty's Process Server made an appointment with Donofrio to have her taxes prepared at the 8647 Little Road, Suite 6, New Port Richey, Florida office. This office is located within Liberty territory FL022, specifically, three doors down from the previous 8647 Little Road, Suite 9, New Port Richey, Florida office. Mrs. Sharp arrived at 9:35 a.m. She found Defendant preparing the tax returns of another individual. Thereafter, Mrs. Sharp was lead to the rear of the office. Defendant was under the impression that Mrs. Sharp wanted her tax return prepared. However, upon being lead to the rear of the office, Mrs. Sharp effectuated service of process.

Defendant is also currently listed as an authorized Internal Revenue Service e-file provider. Moreover, Defendant is listed with the IRS as the Point of Contact for TaxPro Tax & Payroll, located at 8647-9 Little Road, New Port Richey, Florida 34654 and is in fact, the owner and operator of TaxPro Tax & Payroll. Again, this new office is just three doors down from Defendant's former Liberty franchise office.

On January 27, 2005, Plaintiff filed their Complaint along with a Motion for Preliminary Injunction. On April 20, 2006, Plaintiff then filed a Motion for Summary Judgment. In

accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Defendant was given the opportunity to respond to Defendant's motion with any material that she wished to offer in rebuttal. Defendant was advised that failure to submit any materials could result in an adverse judgment based on Plaintiff's Motion and accompanying affidavits. Defendant has failed to respond. Accordingly, this matter is now ripe for adjudication.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court must view the facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. DISCUSSION

Plaintiff moves for Summary Judgment on the grounds that Defendant breached material covenants not to compete and not to solicit of the Mutual Termination Agreement by providing tax services to, and soliciting the business of former and potential Liberty customers in violation of the two (2) year, twenty-five (25) mile boundary created by the contract. Plaintiff also asserts

that in light of Defendant's material breach, Plaintiff is entitled to rescission of the Mutual Termination Agreement. Specifically, Plaintiff maintains that Defendant's debt in the amount of $99,359.89, which was forgiven pursuant to the contract, should now be granted. In the alternative, Plaintiff contends that should the debt amount not be granted, minimum payment royalties should be granted. Finally, Plaintiff moves for a permanent injunction on the grounds that Defendant continues to breach her non-compete and non-solicit obligations.

A.  **There is No Issue of Material Fact as to Whether Defendant Breached the Mutual Termination Agreement**

To state a claim for breach of contract, Plaintiff must show: (1) "a legal obligation of a defendant to the plaintiff, (2) violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff. *Westminster Investing Corp. v. Lamps Unlimited, Inc.,* 379 S.E.2d 316, 237 Va. 543 (1989) (quoting *Caudill v. Wise Rambler*, *Inc.,* 168 S.E.2d 257, 259, 210 Va. 11, 13 (1969)). Plaintiff specifically alleges that Defendant has failed to comply with her obligations under the Agreement not to compete and not solicit customers within twenty-five (25) miles of Defendant's former territories for a period of two (2) years following the Termination Agreement. Although the Court must view the evidence in the light most favorable to the non-moving party, the Court must grant summary judgment if the evidence is so one-sided that one party must prevail as a matter of law. *O'Conner v. Consol. Coin Caterers Corp.*, 56 f.3d 542, 545 (4th Cir. 1995) (citing *Anderson,* 477 U.S. at 251-52). In the instant case, the Defendant is bound by the Termination Agreement which provides, in pertinent part that a "Franchisee shall immediately comply with the Post Termination Obligations contained in the Franchise Agreements, including, but not limited to, the following: a. Abide by the covenant not to compete as described in the Franchise Agreements . . ." (Compl. Ex. 2). Moreover, under

Paragraph 10(b) of the Franchise Agreement, the Defendant, as a franchisee agreed to the following:

> "that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business, [Defendant] agree[s] not to directly or indirectly prepare or electronically file income tax returns, or offer Bank Products, within the Territory or within twenty-five miles of the boundaries of the Territory granted by this Agreement."

With respect to her non-solicitation obligations, Defendant similarly agreed,

> "that for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business [Defendant] will not within the Territory or within 25 miles of the boundaries of the Territory, directly or indirectly, solicit the patronage of any person or entity served by any of [Defendant] prior Liberty offices in the last 12 months that [Defendant] [was] a Liberty franchisee, for the purpose of offering such person of entity income tax preparation, electronic filing of tax returns, or Bank Products."

Plaintiff's assertions of Defendant's breach of the Termination Agreement is undisputed. Morever, Plaintiff offers overwhelming evidence to substantiate it's allegations. First, Plaintiff has provided a solicitation letter dated January 7, 2006, sent by Defendant to former and prospective clients of Liberty in which letter, Defendant explicitly states the she operated former Liberty offices and desires and intends to continue to provide tax services at her new location, 8647-6 Little Road-just three doors down from her former Liberty office. This solicitation clearly violates the post Termination time and boundary restrictions. Plaintiff has also provided supporting affidavits of among others, Sue Shrader, and Nicole Winters, Office Managers for Liberty, Rebecca Ross, Corporate Paralegal for Liberty, and Connie Sharp, a private investigator, which establish that Defendant has continued to solicit and provide tax services to patrons within the assigned twenty-five (25) miles of Defendant's former franchise territory FL022. (Decl. Of Sue Shrader, Nicole Winters & Connie Sharp). As a matter of fact, Defendant

currently owns the new tax office just three doors from her former Liberty tax office in Territory FL022.[2] These are all direct violations of the Termination Agreement between the parties. Therefore, the Court finds that there is no genuine issue of material fact on Plaintiff's claim that Defendant breached the Mutual Termination Agreement.

**B.     Rescission and Damages under the Franchise Agreement**

With respect to damages, Plaintiff asserts that a judgment for $99,359.85, is appropriate pursuant to its right of rescission as a result of Defendant's material breach of the Termination Agreement. Plaintiff also argues in the alternative, that if rescission is not granted, they are entitled to minimum royalty payments for this past tax season and next tax season, for the duration of the non-compete and non-solicit duties breached by Defendant. The Court concludes that rescission of a contract is proper when the failure of consideration by one party defeats the purpose or goes to the root of the contract. *Federal Deposit Insurance Corp., v. Stith*, 772 F. Supp. 279, 284 (E.D. Va. 1991) (citing *Bolling v. King Coal Theatres*, 41 S.E.2d 59, 62, 185 Va. 991, 996 (1947)). The primary purpose of the Agreement is to prevent Defendant from providing services to and/or soliciting former and prospective clients post Termination of the Franchise Agreements. Defendant failed to meet such obligations.

Paragraph 10(c) of the Franchise Agreement states that in the event of a breach:

> [Defendant] agrees to pay to [Plaintiff], as a genuine pre-estimate of liquidated damages, royalties and advertising amounts as set forth in Paragraph 4 of this Agreement with respect to those revenues derived by [Defendant] and those associated with [Defendant] from preparation of tax returns, electronic filing, Bank Products and related services within the area specified in the covenant not to compete. Such payments will continue for two years or for the

---

[2] Defendant's new tax office is named Taxpro and is located at 8647, Suite 6, Little Road, New Port Richey, Florida.

> balance of the then existing term of this Agreement, whichever is greater. The parties expressly acknowledge and agree that such payments represent only an estimate of a portion of our damages, the full measure of damages is greater, such a breach causes us irreparable harm, and we are entitled to injunctive relief and further damages irrespective of these payments.

The Court finds that Plaintiff's entitlement to the $99,359.85 debt owned by Defendant is consistent with Plaintiff's right to damages. Plaintiff has provided several documents including invoices and a supporting affidavit from Jan Gundran, Staff Accountant for Liberty, to establish this debt amount as of May 16, 2006 (date of the Mutual Termination Agreement)(Decl. Jan Gundran). Therefore, Plaintiff is entitled to $99,359.85 in damages.

**C.    Permanent Injunctive Relief**

Finally, Plaintiff maintains that it is also entitled to injunctive relief to prevent Defendant and all her agents, employees and all other persons in active concert or participation with her through May 16, 2007 (the end date of non-compete clause), from further breach of the Termination Agreement. To determine whether permanent injunctions are appropriate, the Fourth Circuit employs a four factor balancing test of the following: (1) the likelihood of irreparable harm to the plaintiff if the injunction is not granted; (2) the likelihood of harm to the defendant if the requested injunction is granted; (3)the likelihood the plaintiff will succeed on the merits; and (4) the public interest. *See Hughes Network Systems, Inc., v. InterDigital Comm'n Corp.*, 17 F.3d 691, 693 (4th Cir. 1994); *Blackwelder Furniture Co., v. Seilig Mfg. Co., Inc.,* 550 f.2d 189, 194 (4th Cir. 1977).

The Plaintiff has articulated specific harm if the injunction is not granted. First, if not prevented, Defendant will continue to breach her non-compete and non-solicit obligations. Second, such a continued breach presents Plaintiff with the high likelihood of permanent loss of

former and potential customers. Moreover, Plaintiff asserts that courts within this Circuit have held that when failure to grant injunctive relief creates the possibility of permanent loss of customers to a competitor or the loss of good will, the irreparable harm prong is satisfied. *See Multi-Channel TV Cable Co. V. Charlottesville Quality Cable Operating Co.*, 22 f.3d 546, 552 (4th Cir. 1994). *See also Novus Franchising Inc., v. Taylor,* 795 F. Supp. 122, 130 (M.D. Pa. 1992); *Merry Maids Ltd. Partnership v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998).

With respect to the second prong of the four factor test, the Court finds that Defendant will not be harmed if the permanent injunction is granted. An injunction will do nothing more then enforce Defendant's contractual obligations under the Termination Agreement. Morever, as Plaintiff points out, Defendant is free to solicit and provide tax preparation services anywhere outside the twenty five (25) mile boundary created by the Termination Agreement.

With respect to the final two prongs. Plaintiff has established success on the merits. The Court has found that as a matter of law, summary judgment is appropriate. Finally, in order to determine whether a permanent injunction is appropriate in contemplating the public interest, courts often consider whether there is a threat of continuing violations. *See Music City Music, et al. v. Alfa Foods*, 616 F. Supp. 1001, 1003 (E.D. Va. 1985); *Arista Records v. Tysinger,* 867 F. Supp. 345 (M.D.N.C. 1994). Clearly, Defendant has and will continue to violate her non-compete and non-solicitation obligations absent an injunction. Therefore, the Plaintiff's motion for a permanent injunction is **GRANTED.**

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED** and Plaintiff is awarded judgment in the amount of $99,359.85 plus reasonable costs and attorneys

fees.  Plaintiff shall file with the Court its statement of reasonable costs and attorneys fees within ten (10) days of the date of this Order.  A permanent injunction shall be issued in a separate Order.

The Clerk is **DIRECTED** to send a copy of this Order to the parties.

**IT IS SO ORDERED.**

_____/s/_____
RAYMOND A. JACKSON
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September 26, 2006